CONSTANTINA M. CIAFFONE, Respondent-Appellant, v MICHAEL T. CIAFFONE, Appellant-Respondent, and MARC BURNETT, as Trustee of a Trust Created by MICHAEL T. CIAFFONE, Respondent. [645 NYS2d 549] —White, J.

Prior to the parties' marriage on August 23, 1986, defendant Michael T. Ciaffone (hereinafter defendant) had acquired a 75% interest in Algonquin Supply Corporation, which operates a True Value Hardware Store in the Town of Newburgh, Orange County, a 50% interest in MacNarry and Ciaffone Builders, a partnership engaged in the construction of residential homes, and a 33$^{1}$/$_{3}$% in Scenic Hills Associates, an entity that purchased and developed a 38.8-acre parcel of property in the Town of Newburgh. Defendant also purchased a vacant lot in the Town of New Windsor, Orange County, and began construction of a home that eventually became the marital residence. During the marriage, and before the commencement of this action in April 1993, defendant purchased two additional properties which he placed in an irrevocable trust he created for the benefit of the parties' two children.

At the conclusion of a bench trial,[1] Supreme Court determined that the parties' marital property consisted of the appreciated value of Algonquin, the marital residence, defendant's IRA, plus jewelry and the cash surrender value of an insurance policy. It then proceeded to distribute 40% of the marital estate to plaintiff in the form of a distributive award of $173,039.50. In addition, Supreme Court awarded the parties joint custody and directed defendant to pay maintenance in the sum of $200 per week for three years and child support of $300 per week. It also granted plaintiff exclusive possession of the marital residence for three years and directed defendant to pay the carrying charges for those three years. Both parties appeal. We shall first consider defendant's appeal.

The first issue we consider is whether Supreme Court abused its discretion in awarding plaintiff a 40% share of the marital property. Equitable distribution is designed to arrive at a fair distribution of the parties' marital property based upon the factors enumerated in Domestic Relations Law § 236 (B) (5) (d) (*see, Cappiello v Cappiello*, 110 AD2d 608, 609, *affd* 66 NY2d 107). In this instance, Supreme Court acknowledged the statutory factors, but only mentioned two as the basis for its decision: the short duration of the marriage and plaintiff's long history of mental stress and anxiety.

We recognize that it is not necessary for the trial court to analyze each statutory factor (*see, Chasin v Chasin*, 182 AD2d 862, 864); however, Supreme Court's brief reference to two factors was inadequate as it did not satisfy the purpose of Domestic Relations Law § 236 (B) (5) (g): to prevent the arbitrary exercise of discretion and to provide the basis for appellate review where discretion is improvidently exercised (*see, Otto v Otto*, 150 AD2d 57, 61). We need not remit the matter because, with the full trial record before us, we have the authority to make the necessary findings (*see, DeSantis v DeSantis*, 205 AD2d 928, 929).

At the time of the commencement of this action plaintiff had no income, while in 1992 defendant's adjusted gross income was $110,378. It does appear that plaintiff has the ability to become self-supporting within three years when she obtains her Master's degree in elementary education. While she only worked at Algonquin for a short time, she maintained the marital residence and was the children's primary caregiver. It further appears that she is no longer a legatee under defendant's last will and testament nor is she entitled to any distributions

---

1. The parties stipulated to mutual divorces.

from the trust defendant created. When these factors along with those mentioned by Supreme Court are considered, a 40% distribution of the value of the marital property to plaintiff is fair (*see, Orofino v Orofino*, 215 AD2d 997, 998, *lv denied* 86 NY2d 706).

As it is well settled that the weight to be attributed to expert testimony is left to the trier of fact (*see, Ducharme v Ducharme*, 145 AD2d 737, 739, *lv denied* 73 NY2d 708; *Wilbur v Wilbur*, 116 AD2d 953), we reject defendant's argument that Supreme Court should not have accepted the opinion of plaintiff's expert as to the appreciated value of Algonquin; the opinion was based on an acceptable method of determining the value of a closely held business, i.e., the discounted cash flow method (11B Zett-Edmonds-Schwartz, NY Civ Prac ¶ 41.04 [4], at 41-37).

The opinion of plaintiff's expert is that Algonquin's appreciated value was $300,000. Supreme Court apparently utilized this figure in its calculations, but arrived at a valuation figure of $214,000. We find no support in the record for this figure. Therefore, employing the correct value of $300,000, the value of plaintiff's distributive award in this asset is $120,000 ($300,000 × 40%).[2]

Supreme Court also miscalculated the credit defendant was entitled to receive for the investment of his premarital funds in the marital residence. Instead of $22,000, the correct sum is $33,718[3] which reduces the valuation of this asset to $156,282 ($190,000 − $33,718). We reject defendant's argument that he should be given an additional credit of $99,784 because, even though these funds may have been separate property, defendant deposited them in a joint account with plaintiff and failed to establish, by clear and convincing evidence, that the joint account was created only as a matter of convenience (*see, Dunn v Dunn*, 224 AD2d 888, 890; *Gundlach v Gundlach*, 223 AD2d 942). Lastly, Supreme Court did not err in disallowing the $80,000 home equity loan defendant placed on the marital residence as there is no indication that the proceeds were utilized in the marital partnership.

Defendant's argument that Supreme Court should not have distributed a portion of his IRA to plaintiff lacks substance since contributions made to a retirement trust or plan during marriage are treated as marital property (*see, Elmaleh v Elmaleh*, 184 AD2d 544, 545).

2. Plaintiff's calculations based upon the full value of Algonquin's appreciated value are also erroneous because at the time of the commencement of this action defendant only held a 75% interest in Algonquin.

3. Purchase of lot—$21,252; construction cost—$12,466.

Defendant next draws our attention to the child support award and Supreme Court's direction that he pay the carrying charges on the marital residence. In the absence of an explanation, the imposition of these dual obligations is erroneous as it results in child support payments in excess of the statutory guidelines because shelter costs are inherent in the basic child support obligation set forth in Domestic Relations Law § 240 (1-b) (*see, Ryan v Ryan*, 186 AD2d 245, 246). The proper procedure under these circumstances is to subtract the amount of the annual carrying charges from the parties' gross income before applying the statutory percentages (*see, Linda R. H. v Richard E. H.*, 205 AD2d 498, 500). Because the record does not permit us to make this calculation, we shall remit this issue to Supreme Court to recalculate child support or to articulate its reasons for the child support ordered (*see, Polychronopoulos v Polychronopoulos*, 226 AD2d 354, 356). Also, on remittal, Supreme Court should reduce defendant's income by the amount of the maintenance to be paid to plaintiff prior to determining his child support obligation (*see, Tarascio v Tarascio*, 183 AD2d 890, 891).

Supreme Court's maintenance award is appropriate for the reasons set forth in its decision and for the additional reason that it will enable plaintiff to maintain her predivorce standard of living until she becomes self-supporting (*see, White v White*, 204 AD2d 825, 828, *lv dismissed* 84 NY2d 977).

In the absence of evidence that comparable housing could be obtained by plaintiff at lower cost, that plaintiff is financially incapable of maintaining the marital residence or that either party is in immediate need of his or her share of the proceeds from the sale of the marital residence, we shall not disturb Supreme Court's award to plaintiff of exclusive possession of the marital residence for three years (*see, Kalisch v Kalisch*, 184 AD2d 751, 754).

Turning to plaintiff's cross appeal, she takes issue with Supreme Court's finding that defendant's interest in Scenic Hills was his separate property. In her view the appreciation in value of this asset during the marriage is marital property. The Court of Appeals has stated that "where an asset * * * is, by its very nature, nonpassive and sufficient facts exist from which the fact finder may conclude that the titled spouse engaged in active efforts with respect to that asset, *even to a small degree*, then the appreciation in that asset is, to a proportionate degree, marital property" (*Hartog v Hartog*, 85 NY2d 36, 48 [emphasis in original]).

Clearly, a real estate development project, like Scenic Hills,

is a nonpassive asset. As to the second criterion, the record shows that defendant actively participated in Scenic Hills' affairs by attending planning board meetings and loaning it money. With the criteria established in *Hartog v Hartog* (*supra*) having been satisfied, we find that plaintiff is entitled to a 40% share of the appreciated value of defendant's interest in Scenic Hills. Inasmuch as we cannot make this calculation because the record is not fully developed, we will remit this issue to Supreme Court.

Although the properties defendant placed in the trust were purchased with his separate funds, it is undisputed that $110,000 in marital funds were used to finance the construction of a two-family dwelling on one parcel of property known as the Gardener Town Road lot. As a consequence, this property was transformed into a marital asset subject to equitable distribution (*see, Lord v Lord*, 124 AD2d 930, 932). Considering the $160,000 appraised value of this asset and giving defendant credit for the $20,000 in separate property he used to purchase this property, the amount of plaintiff's distributive award in this asset is $56,000 ($140,000 × 40%).

We have no quarrel with Supreme Court's dismissal of plaintiff's causes of action seeking to set aside the trust since it was established for a legitimate purpose (*compare, Goldberg v Goldberg*, 172 AD2d 316, *lv dismissed* 78 NY2d 1124). More importantly, there is no indication that its creation will render defendant insolvent or unable to satisfy the obligations imposed upon him by the divorce judgment (*see*, Debtor and Creditor Law § 275).

Supreme Court's classification of certain items of jewelry given plaintiff by defendant during the marriage as marital property was correct (*see, Chase v Chase*, 208 AD2d 883, 884). It should, however, have given plaintiff a credit of $1,724 for the evidence shows that these funds were plaintiff's separate property which she utilized to purchase a ring. This credit reduces the distributive value of the jewelry to $7,676 ($9,400 − $1,724) and plaintiff's distributive award therein to $3,070.

Plaintiff's last argument concerns Supreme Court's award of joint custody. In October 1993, based upon the parties' stipulation entered into during a Family Court Act article 6 proceeding, Family Court granted plaintiff sole custody of the children with liberal visitation rights to defendant. In the absence of proof demonstrating a change in circumstances warranting a modification of an existing custody arrangement to insure the children's welfare and that joint custody would be workable for these parties, Supreme Court should not have modified

Family Court's order (see, Matter of Scott v Scott, 215 AD2d 893, 894, lv denied 86 NY2d 707). Consequently, we shall reinstate Family Court's order and direct that it be incorporated in the judgment.

To recapitulate, as the result of our review, the value of the marital estate, exclusive of defendant's interest in Scenic Hills, has been fixed at $645,157 and the value of the distributive award to plaintiff has been increased to $258,063. In view of this increase, on remittal, Supreme Court should extend the time within which defendant must satisfy this award.

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by establishing the value of defendant's interest in Algonquin Supply Corporation at $300,000, reducing the value of the marital residence to $156,282, reducing the valuation of jewelry to $7,676, determining that defendant's interest in the appreciated value of Scenic Hills Associates is marital property, determining that the Gardener Town Road property is marital property that has a valuation of $140,000 and that plaintiff's distributive award therein is $56,000, and reinstating Family Court's custody order; matter remitted to the Supreme Court for further proceedings regarding the issues of child support and valuation of defendant's interest in Scenic Hills Associates; and, as so modified, affirmed.