■ DANNY T. RUSHFORD et al., Appellants, v REGINALD H. FACTEAU, Respondent. (And a Third-Party Action.) [720 NYS2d 622] —Peters, J. Appeals (1) from an order of the Supreme Court (Dawson, J.), entered June 19, 1998 in Clinton County, which, upon an inquest, awarded damages to plaintiffs, and (2) from the judgment entered thereon.

Upon our prior review of this action arising from construction-related problems on a partially built home that plaintiffs purchased from defendant, we dismissed a portion of the complaint for noncompliance with the notice provisions of the General Business Law (247 AD2d 785, 785-786). Plaintiffs thereafter sought summary judgment on the remaining claims, submitting an affidavit from their engineering expert, Thomas La Bombard, which was opposed by an affidavit from defendant's expert engineer, Richard Pikul.

Relying upon his engineering reports from both 1993 and 1997, La Bombard opined, in support of that motion, that defendant deviated from the original building plans and engaged in substandard construction practices. To achieve the standards established by such plans, La Bombard proposed, *inter alia*, the replacement of every joist in the house as well as the

jack post, thus requiring plaintiffs to vacate the premises for up to three months. Notably, in the 1993 engineering report, La Bombard noted the "impractical difficulties to remove the existing floor joists and replace them with the correct lumber." He alternatively recommended, *inter alia*, the installation of a center beam in each floor joist bay with proper support columns and a modification of all other joists by the placement of bridging. He further recommended the installation of additional posts, with a steel plate fastened to the flooring, and the installation of posts anchored to the floor. Pikul, however, wholly disagreed with the asserted deficiencies in both the existing framing and the grade of lumber used. Acknowledging that he never analyzed the soundness of the floor joists, he nonetheless admitted that bridging was missing and that the posts to the stairway needed to be anchored.

Finding a failure to rebut plaintiffs' prima facie showing that the bridging in the basement was missing, the stairway posts were inadequately anchored and that the floor joists on the first floor were inadequate, Supreme Court awarded partial summary judgment and Ordered an inquest; all remaining claims were to await trial. At the inquest, Glen La Moy, a construction contractor, testified for plaintiffs. Although he estimated the costs to remedy the deficiencies identified by the court, including the total replacement of all floor joists, he conceded on cross-examination that the bridging and stairway deficiencies could be resolved at a cost of $150. Regarding the structural integrity of the floor joists, plaintiffs offered the testimony of their expert, La Bombard. Advocating the total replacement of the joist system, he acknowledged that while there were other methods that could remedy the problem, he dismissed those alternatives as "patch jobs."

On the second day of the hearing, defendant informed Supreme Court, for the first time, that he was unable to secure the presence of Pikul, his disclosed expert, and therefore sought to proffer the engineering testimony of Darin Liska. In an attempt to fashion a remedy short of preclusion, the court ruled, over plaintiffs' objection, that it would permit Liska to testify in La Bombard's presence and entertain requests for mitigating rulings or an adjournment at the conclusion thereof to prepare for cross-examination. Liska testified that despite his lack of familiarity with this home, the New York State Building Code supported his view that the existing joists could be strengthened with additional bridging or by the nailing of an extra joist next to the existing joists. Charles Willer, a contractor, also testified for defendant. He stated that he would charge

approximately $600 to fix the floor joists using the remedy proposed by Liska.

Supreme Court, in its decision and order, rejected that portion of La Bombard's testimony which established that nothing short of a total replacement of the joist system could remedy the problem. It noted that plaintiffs failed to prove how this remedy, rather than that proposed by Liska, could materially improve the conditions about which they complain. Adopting Willer's testimony that the existing joists could be strengthened by installing additional bridging at a cost of approximately $526 and, crediting the testimony of La Moy regarding a $50 cost to fix the basement bridging and allowing $150 to repair the cellar stairway, it awarded plaintiffs $726, plus prejudgment interest, costs and disbursements. Plaintiffs appeal from both the order and the judgment entered thereon.

Addressing the contention that Supreme Court erred when it permitted Liska to testify as an expert despite defendant's failure to provide plaintiffs with the requisite notice, CPLR 3101 (d) (1) (i) expressly provides that "where a party for good cause shown retains an expert an insufficient period of time before the commencement of trial to give appropriate notice thereof, the party shall not thereupon be precluded from introducing the expert's testimony at the trial solely on grounds of noncompliance." Recognizing the broad discretion vested in a trial court in matters of this kind, we can find no abuse of discretion here. Despite contrary contentions, there can be no viable claim of surprise since defendant had previously notified plaintiffs of his intention to elicit similar expert testimony from Pikul (*see, Hansel v Lamb*, 257 AD2d 795, 796). Further finding "no indication that defendant intentionally or willfully withheld notice that this proof would be offered" (*id.*, at 796), we conclude that with the remedial measures offered by the court, the order is just (*see,* CPLR 3101 [d] [1] [i]).

As to Supreme Court's reliance upon Liska's testimony, we recognize "that the weight to be attributed to expert testimony is left to the trier of fact" (*Ciaffone v Ciaffone*, 228 AD2d 949, 951; *see, Ducharme v Ducharme*, 145 AD2d 737, 739, *lv denied* 73 NY2d 708; *Wilbur v Wilbur*, 116 AD2d 953). Given the scope of Liska's testimony, which was not to identify particular problems but to explore methods that could be used to strengthen inadequate floor joists, we find no error since his opinions and analyses were based on State building codes and accepted engineering theories. Plaintiffs failed to present viable contrary proof. Also, without error is the court's discretionary determination to reject that portion of La Bombard's

testimony which recommended, *inter alia*, the total replacement of all floor joists; his earlier reports submitted in connection with the motion for summary judgment admitted the "impractical difficulties" of the method he advocated at the inquest (*see, Ciaffone v Ciaffone, supra*, at 951).

Nor do we find error in the damages awarded. The inquest was limited to three specific issues. Plaintiffs' own witnesses testified that it would cost approximately $50 to install additional bridging in the basement and approximately $100 to fix the stairway. Despite the fact that Supreme Court requested separate cost estimates for the repair of the floor joists in the first and second floors, no separate estimates were presented. With a further failure to submit any evidence that the claimed structural inadequacies caused a decrease in the market value of their home or that remediation of the floor joists by the method prescribed by Liska would affect its market value, the court properly relied upon the only relevant cost estimate before it. With the limited nature of this inquest, we find no discernable error.

Cardona, P. J., Mercure, Crew III and Rose, JJ., concur. Ordered that the order and judgment are affirmed, with costs.